UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| JERRY LAIDMAN, an individual, ) | | |
| ) | | |
| Plaintiff, ) | 2:11-CV-00704-LRH-PAL | |
| ) | | |
| v. ) | | |
| ) | ORDER | |
| CHUCK CLARK, an individual; LOUIS ) | | |
| MARTIN, an individual; TOTALFLARE, ) | | |
| INC., a Florida corporation; CARL LUE, an ) | | |
| individual; DOES I through X, inclusive; ROE ) | | |
| corporations I through C, inclusive, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| CHUCK CLARK, an individual; LOUIS ) | | |
| MARTIN, an individual; TOTALFLARE, ) | | |
| INC., a Florida corporation; CARL LUE, an ) | | |
| individual; DOES I through X, inclusive; ROE ) | | |
| corporations I through X, inclusive, ) | | |
| ) | | |
| Counter-claimants, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| JERRY LAIDMAN, an individual, ) | | |
| ) | | |
| Counter-defendant. ) | | |

This is an action sounding in fraud. Before the court is plaintiff Jerry Laidman's Motion for Partial Summary Judgment (#43[1]). Defendants Chuck Clark, Louis Martin, and Totalflare, Inc., have responded (#44), and Laidman has replied (#48).

**I.     Facts and Procedural History**

Laidman is an inventor and engineer. (Laidman's Motion for Partial Summary Judgment ("PMSJ") #43, Ex. 1, ¶ 3.) In 2006, Laidman approached Clark and Martin with an idea for an electronic flare product. (Defendants' Response #44, Ex. 1, ¶¶ 16-17.) Laidman had had success at designing these types of products in the past, and Clark and Martin had worked with Laidman (to neither side's complete satisfaction) on the sales and marketing end. (*Id*. at Ex. 1, ¶¶ 6-12.) The 2006 meeting resulted in an agreement, though the parties dispute the content of that agreement. In particular, while the parties agree that Laidman was to design the electronic flare (known as the TotalFlare) in return for $75,000, they disagree about whether Laidman was to assign or license his patent to a newly formed company (TotalFlare, Inc.) and about whether Laidman was to receive a thirty percent equity stake in that company. (*Compare id*. at Ex. 1, ¶ 19 *with* Laidman's PMSJ #43 at Ex. 1, ¶ 17.)

TotalFlare, Inc., was founded in March 2007, listing Martin as President, Laidman as Vice President, and Clark as Secretary/Treasurer. (Defendants' Response #44 at Ex. 1, ¶ 30.) However, Laidman took longer than expected in developing the TotalFlare. (*Id*. at Ex. 1, ¶ 30.) Over the course of this development, Laidman repeatedly inquired about his stake in TotalFlare, Inc. (*Id*. at Ex. 1, ¶ 34.) It is undisputed that Martin promised Laidman an ownership interest in the company in response to these inquiries. (*Id*. at Ex. 1, ¶¶ 34-35.) Martin claims he made these promises, knowing them to be false, to prevent Laidman from quitting. (*Id*. at Ex. 1, ¶ 35.)

Eventually, in November 2010, Martin and Clark wrote to Laidman informing him that he was not entitled to an ownership interest in TotalFlare, Inc. (Laidman's PMSJ #43 at Ex. 1, ¶ 44.)

---

[1] Refers to the court's docket number.

Martin and Clark had removed Laidman as Vice President of the company (without Laidman's knowledge) in October 2009. (*Id*. at Ex. 1, ¶ 32.)

Laidman has lodged fourteen claims against Martin, Clark, and TotalFlare, Inc. However, only one claim concerns the instant motion for partial summary judgment: fraud.

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

To prove fraud in Nevada, a plaintiff must show by clear and convincing evidence the following elements: (1) a false representation (2) which the defendant knew to be false, (3) made with the intention of inducing the plaintiff to act in reliance upon the misrepresentation, and (4) upon which the plaintiff does in fact rely (5) to his detriment. *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975).

Here, defendant Martin does not dispute that he made knowing misrepresentations, the intent of which was to induce Laidman to stay on the job.[2] (*Id.* at Ex. 1, ¶ 35.) However, Martin does dispute the remaining elements: that Laidman relied to his detriment upon Martin's misrepresentations. Martin argues first that Laidman cannot have been damaged by being induced to perform his preexisting obligations. Second, Martin argues that there can be no reliance where, as here, the promises were unenforceable for lack of consideration.

Taking Martin's second argument first, it confuses the law of contract with the law of fraud.[3] As defined in Nevada, "justifiable reliance" in a fraud case exists when the misrepresentation played a "material and substantial part in leading the plaintiff to adopt his particular course." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (quoting *Lubbe*). Justifiable reliance also requires that the plaintiff does not have information "which would serve as

---

[2] Defendant Clark does dispute that he made such misrepresentations, but, as discussed below, this dispute is immaterial to the resolution of Laidman's motion.

[3] The distinctions between these two are more than doctrinal: fraud requires a heightened pleading standard (in part because the allegation itself is harmful to one's reputation), Fed. R. Civ. P. 9(b); is often subject to a different statute of limitation (in part because fraud is hard to detect), *see, e.g.*, Nev Rev. Stat. 11.190; and usually demands clear and convincing evidence, *see Lubbe*, 540 P.2d at 117.

4

a danger signal and a red light to any normal person of his intelligence and experience." *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987). While the "danger signal and red light" standard might apply to some promises unsupported by consideration, not all such promises raise this kind of alarm. *See American Savings & Loan Association v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 42 (Nev. 1969) (enforcing a promise unsupported by consideration because reliance on the promise was "reasonable and foreseeable"). Therefore, Nevada law does not support Martin's consideration requirement.

*American Savings* is instructive for another reason: there, reliance by one party turned an unenforceable promise by another party into an enforceable promise. *Id*. This is simply the doctrine of promissory estoppel, and Martin's notion that there can be no justifiable reliance on a promise unenforceable for lack of consideration is contrary to it. *See Pink v. Busch*, 691 P.2d 456, 459 (1984) (setting out the elements of Nevada promissory estoppel).

Martin relies on *Dennis v. First National Bank of the South*, 668 S.E.2d 479 (Ga. Ct. App. 2008) for the proposition that "[t]here can be no justifiable reliance on . . . a promise unenforceable for lack of consideration" in a fraud case. Again, however, the doctrine of promissory estoppel renders this proposition problematic. If a fraud claim requires a promise supported by consideration *and* justifiable reliance on that promise (along with damage to the reliant party), then by the doctrine of promissory estoppel, every fraud claim involves an enforceable contract. Thus, under this rule, every fraud claim is a breach of contract claim, at least when the claim is based on the (false) promise's break. With due respect to the state of Georgia, that is not the law.[4] *See, e.g., La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712-14 (Fla. Dist. Ct. App. 1998) (distinguishing fraud from breach of contract and providing examples).

//

---

[4] Georgia recognizes the doctrine of promissory estoppel. *See Sun-Pacific Enterprises, Inc. v. Girardot*, 553 S.E.2d 638, 641 (Ga. Ct. App. 2001).

5

Martin's next argument also hinges on contract principles. Because Laidman was only induced to perform his preexisting obligations, they say, he suffered no damage as a result of the fraudulent inducements. *See, e.g., Sinclair v. State Bank of Jerseyville*, 566 N.E.2d 44, 45 (Ill. App. 1991) ("[G]enerally, where as a result of a misrepresentation one is induced to perform a preexisting legal obligation, there can be no injury compensable by law.") Of course, this depends on what the parties understood Laidman's preexisting obligations to be.

The core dispute is whether Laidman was promised an ownership interest in TotalFlare, Inc., during the April 2006 meeting. Martin has provided direct testimony that no such interest was promised at the time. (Defendants' Response #44 at Ex. 1, ¶¶ 28, 36 ("Mr. Laidman was not an owner of [TotalFlare, Inc.];" "At all times, Mr. Laidman was contractually obligated to perform his services under our Agreement without being given an ownership interest.").) Since, in a ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed," Martin has demonstrated a genuine issue of disputed material fact with respect to the terms of the April 2006 agreement. *Liberty Lobby*, 477 U.S. at 255.

The question is then whether–if the terms of the April 2006 agreement did not include an ownership interest for Laidman–Laidman was damaged by Martin's false promises of an ownership interest. Here Martin relies on *Sinclair* for the rule that Laidman could not be damaged by being duped into performing his obligations under the 2006 agreement. This rule has an impressive pedigree, *see, e.g,*, 27 Richard A. Lord, *Williston on Contracts* § 69:32 (4th ed. 2012), but the Nevada Supreme Court has not addressed it. Therefore, this court must predict how the Nevada Supreme Court would treat the *Sinclair* rule. *See Burlington Insurance Co. v. Oceanic Design & Construction, Inc.*, 383 F.3d 940, 944 (9th Cir. 2004).

The Nevada Supreme Court would likely reject it. Where contractual obligations are involved, this rule allows hold-ups. A hold-up occurs when one party uses its superior bargaining power to extract inefficient concessions from another party. *See, e.g.*, Bengt Holmström & John Roberts, *The Boundaries of the Firm Revisited*, 12 Journal of Economic Perspectives 4, 74 (1998).

For example, suppose a captain of a fishing boat hires some fishermen for the day.[5] When out at sea, the fishermen refuse to perform unless the captain doubles their wages, and the captain–having no other options except a total loss–agrees. This is a hold-up.

Hold-ups are discouraged in contract law. Under the preexisting duty rule, "a mere promise to perform that which the promisor is already bound to do" is a promise lacking consideration and therefore unenforceable. *County of Clark v. Bonanza No. 1*, 615 P.2d 939, 944 (Nev. 1980). In the above example, the captain's promise to double the fishermen's wages is unenforceable under this doctrine. *See Alaska Packers' Association v. Domenico*, 117 F. 99, 102-05 (9th Cir. 1902). As Judge Posner notes, "Allowing contract modifications to be voided in circumstances such [as these] assures prospective contract parties that signing a contract is not stepping into a trap, and by thus encouraging people to make contracts promotes the efficient allocation of resources." *Selmer Co. v. Blakeslee-Midwest Co.*, 704 F.2d 924, 927 (7th Cir. 1983).

However, the *Sinclair* rule explicitly allows this type of entrapment, at least when conjoined with the doctrine of expectation damages. Suppose, for example, that prior to leaving shore the fishermen had found a better deal with a different boat captain. The fishermen inform the first captain–call him Ahab–that they are thinking about breaching their agreement (and consequently paying Ahab expectation damages). But Ahab doesn't want to go through the trouble of hiring different fishermen, so he falsely tells them that the second boat is not seaworthy. The fishermen then perform under their original agreement. According to the *Sinclair* rule, the fishermen cannot recover damages for fraud, despite being caught in Ahab's net of lies.

Importantly, Ahab's conduct is inefficient, making it a kind of hold-up. Efficient breach (backed by expectation damages) allows a promisee to walk away from a deal if she finds a better one, as long as she makes the promisor whole. *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008) (describing efficient breach). The idea is that neither party suffers: one party is able to realize

---

[5] These facts are loosely based on *Alaska Packers' Association v. Domenico*, 117 F. 99 (9th Cir. 1902).

7

gains, and the other party is not worse off. However, the *Sinclair* rule puts a thumb on the scale in favor of promisors like Ahab. The promisor's misrepresentation causes the promisee to believe (falsely) that breach will not realize gains, and to act accordingly. Now one party really is worse off–in other words, damaged.

The refusal to recognize this type of loss as "damage" reduces the incentive to contract.[6] If potential contracting parties have no remedy for intentional deceptions that cause them real losses, even when these losses are consistent with their contractual obligations, then they will be reluctant to make contracts. *See Selmer,* 704 F.2d at 927. Furthermore, the *Sinclair* rule is at odds with doctrines like the implied covenant of good faith and fair dealing, which aim to protect against arbitrary or unfair acts by one contracting party that work to the disadvantage of the other, even when there is no breach of contract. *See, e.g.*, *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). Indeed, the *Sinclair* rule inverts the protections of the implied covenant because it forbids deceptions made prior to the contract but allows deceptions made afterwards. It is when parties have ceased their arms-length bargaining and are bosomed in the cooperative venture memorialized by the contract that the *Sinclair* rule permits deceit.

The better approach is announced by the *La Pesca Grande* court: "There isn't *necessarily* damage where there is fraud, which is why no cause of action for fraud exists unless there is damage *due to fraud* that is separate from damages that may result from any subsequent contractual breach." 704 So. 2d at 713. That is, while separate damages due to fraud may be rare in what is essentially a breach of contract action, that does not mean such damages are impossible.

Here, Laidman has not demonstrated any damage resulting from Martin's deception apart from damages recoverable in a breach of contract action. For example, Laidman has not provided evidence of realistic opportunities he would have taken but for Martin's deception. Nor has

---

[6] And the *Sinclair* rule does in fact refuse to recognize this as damage: "The cited authority does not indicate the rule–deeming a party is not damaged by performing an act which that party is required to perform–is inapplicable when that party might gain by nonperformance." 566 N.E.2d at 47.

8

Laidman identified work he performed beyond his contractual obligations in reliance on Martin's promises. Therefore, since Laidman has not identified damage "due to fraud that is separate from damages that may result from subsequent contractual breach," he has not carried his burden on fraud at summary judgment. *See Liberty Lobby*, 477 U.S. at 254 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.")

**IV.   Conclusion**

While Laidman is not barred, in a fraud action, from offering evidence of damage resulting from the performance of a preexisting obligation, he has offered no such evidence traceable to Martin and Clark's deceptions. Summary judgment is therefore not appropriate.

IT IS THEREFORE ORDERED that Laidman's Motion for Partial Summary Judgment (#43) is DENIED without prejudice.

IT IS SO ORDERED.

DATED this 8th day of February, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE